case number 24-2881. Good morning, Mr. Brunson. Morning, Your Honor. It's still morning. So good morning. Just, just barely, but yes, Your Honor. Good morning, Bruce Brunson on behalf of SEI-NCME. I'm here to police the court. Your Honor, this is a case regarding equitable mootness, a judicial doctrine. But I want to go back and talk about the abuse that we believe was here in the sale of this, of this asset. The asset that was sold was a property, 307 6th Avenue. It was owned originally by the Ranieri family that owned a number of properties in the village. And they fell on financial hard times and all of those properties have now been pretty much sold in foreclosure. They were over leveraged. So that's, that's pretty clear the problem with their properties. When they sold this property, they took back a note, SEI-NCME, took back a note of about $7 million, Your Honor. And the property went into foreclosure. It was originally owned, this sale was originally to a company that Mr. Filopoulos owned of Gurney's fame. Mr. Filopoulos was going to develop it. He couldn't develop it for whatever reason. And he, in this foreclosure, the lender, Kreef, sold its note to, the company's very confusing, but a company that was owned by Mr. So, Mr. Snyder then also purchased from Mr. Filopoulos, the equity interest in the debtor. SEI-NCME filed a bankruptcy in order to protect itself with the $7 million note that it had, because the property was about to be sold in a foreclosure. And at that point, Judge Mostondo actually granted an injunction for a couple of weeks and the 307 assets, which was the owner of the property, filed its own bankruptcy at that point. To protect itself. To protect itself. Yes, Your Honor. From, or to maneuver, to acquire the property, for Mr. Snyder to acquire the property. So, Your Honor, we're arguing that there's a, you know, bad, abusive use of the bankruptcy system. Number one, to get around a failed foreclosure where clearly SEI-NCME wasn't notified, they filed bankruptcy and they did a 363 sale. Now, 363 under the bankruptcy code is a very powerful tool. It allows a sale of property by a debtor, free and clear. It requires a number of things, but one major component, there's a provision 363M, which prohibits or limits the ability to appeal a 363 sale, but it requires good faith. So, Your Honor, the argument is, and was at the time with Judge Mustando, that there was not good faith because Mr. Snyderman owned both the note, the debtor, and he sold the property to himself. There was a broker. Have we ever recognized a good faith exception? I, Your Honor, I, in equitable mootness, there is not necessarily a good faith exception. Under 363M of the code, it requires good faith. It's the ability of that faith exception, but yeah, yes, okay. Yes. But under what you were saying? 363M of the bankruptcy code, it requires good faith for there not to be a challenge to the appeal. So, Your Honor, equitable mootness. Is this not, this is what is before us, a determination by Judge Swain, ultimately, that this was equitably moot because of the confirmation of sale? Your Honor, there was a sale first and then the confirmation. We were challenging the sale. We applied for a stay of the sale. We made a, there was a motion to stay the sale and re-argument, and Judge Swain really didn't look at that portion of it. Judge Swain was looking at the confirmation aspect and, you know, I think ... Was there a finding of bad faith? No, Your Honor. No. No, no, no finding of bad faith. It wasn't looked at by Judge Swain. So what is it that you're asking us to do with respect to bad faith? Your Honor, we're, I'm asking that the doctrine of equitable mootness, which is a judicial doctrine, that it is not properly applied in this case, that it should have been the 363M standard that was looked at, and that even under equitable mootness, for getting bad faith, the Chautauqua factors are not met or are met by my client. Did you make the 363M argument? Your Honor, it was made throughout the ... It was made as passive. Did you make the 363M argument? Your Honor, are you referring to in this particular brief? Your Honor, we've referred to it. Yes, I believe, Your Honor. Well, you referred to it in, I'm seeing it at page 12 of your brief, but did you make the argument you're advancing to us now? Your Honor, I believe we referred to it. I don't know that we've made that argument a main argument of the brief at the time. We'll note that the Malls of America case also cautions on equitable mootness. We believe that that's a doctrine that is applied in big cases. It makes a lot of sense to apply it in big cases. It doesn't make any sense to apply it in a case like this, particularly when the facts are egregious as they are. Let me be sure I understand this. At page 12, the point that starts at C is avoidance of a lien under 363F has a simple monetary remedy, and there was no comprehensive change in circumstances. Now, then the point goes on to argue without any citation to 363F, let's hold on and turn that page. Yeah, how would we know that you're urging what you're urging here standing in front of us about how this shouldn't have been dealt with under equitable mootness, but rather under 363F? I'm trying to figure out whether the argument is effectively waived by your failure to raise it in your brief, so tell me why I shouldn't reach that conclusion. Well, Your Honor, we were responding to Judge Swain's equitable mootness point and... Right, but if your argument is that she shouldn't have been dealing with equitable mootness, she should have been considering 363, which is, that's your argument to us today, right? Your Honor, that's part of my argument today. But that's not raised in your brief? It's not raised... Did you ever argue that to Judge Swain, that she should have been applying 363 rather than equitable mootness? Your Honor, yes, I believe we did. You did? In the report. Where would we find that? Well, perhaps when you get up on rebuttal, you can tell us. Yes, Your Honor, I'll look for that. In the meantime, we'll hear from Mr. Frenkel. Sorry, Your Honor? We'll hear from Mr. Frenkel, then we'll hear from you on rebuttal. Yes, Your Honor. Thank you so much.  Thank you, may it please the Court, Mark Frenkel, Bakkenroth Frenkel, and Krinsky, attorneys for the appellee. Judge, first I would like to address the so-called egregious abuse that my client engaged in. Number one, we filed... When Say and Semi filed their bankruptcy, they wrote in the initial first day affidavit, we filed this case to get an arm's length sale, and we think that a sale in the bankruptcy court would do that. My client said, okay, be careful what you wish for. We filed a bankruptcy with an application for a sale, and a sale under a Chapter 11 plan to save transfer tax, save mortgage recording tax, all kinds of great benefits you get from selling property under a plan. We hired one of the two or three most prominent bankruptcy auctioneers, brokers, to do the sale, and they did, and nobody came close to a value that approached how much the mortgagee was owned, who was not the same person as my client, the debtor, and therefore the mortgagee bid in at more than 50 percent higher than the highest arm's length price. So that was not an egregious use of the bankruptcy code. That was doing what was right in bankruptcy, which is liquidating assets for the benefit of creditors, including the creditor who demanded it in their own bankruptcy. This was the way the process is supposed to work. The bankruptcy judge realized it. Judge Swain realized it. And the other thing that happens when you do things right in bankruptcy is that it sticks. It can't be undone just by filing a one-page notice of appeal. The statutes make that clear that sales are protected and that plans are protected. And my friend says that they made a motion for a stay. They made no motion for a stay. They made a motion to stay the sale months before we had the sale. They never made a motion to stay the approval of the sale or the approval of the plan. And what did they move to stay? We had a sale scheduled, I think, in – and by the way, this goes back two years. In June of 2023, and the broker had made a mistake on the dates and had not published a notice. And when he realized it, I said to the bankruptcy judge, we made a mistake, Judge. We agree. Let's put off the sale for a month. We agreed to their stay. And they got their stay. So it was a stay that was premised on a failure to notify, in part? Yes, the – A motion to stay, and then you agreed to that. Yes, we agreed to that. And then we had the sale a month later. And then the court approved the sale a few weeks after that. And what your friend on the other side says is that we should view that initial stay as effectively satisfying one of the main factors under Chicago Act. Exactly. So what's your response to that? It's a – they said they did not make a motion for a stay of the order they're appealing. And that's what's required under Shadowgate. The stay they sought was apropos of something else? Yes. Yeah, okay. Is there anything else, Mr. Franklin? I did the argument as well as I could in the pleadings. If I would answer any questions you have. Otherwise, I'll cede my time to my friend. Thank you very much. Mr. Ponson. Your Honor, it's true that Mr. Franklin and I have gone through a long process together to get to this point. And we work pretty well together. Your Honor, I think – Just to focus you, what he says is that you – and you're familiar with the different factors, and let's just assume for now that we're focused on equitable mootness. So those are two premises. What he says is that you moved for it to stay in a very different context when it came down to the nuts and bolts of an actual sale order. You did not move to stay that. Is that correct? Your Honor, we objected to the sale order. We had moved to stay it previously, and then – You moved to stay it, but premised on a failure to receive notice, as I understand. When you received the notice, right, eventually, and then a month later, Mr. Franklin tells us, and I think the record indicates, there was the sale order and a subsequent confirmation. Did you move specifically to stay those two things? No, Your Honor. I don't believe so.  And so how is it that you can say, again, focus only on equitable mootness, understanding you've got maybe another argument, a statutory argument, how is it that you satisfied the main factor? Well, Your Honor, we believe that that prior motion that we made did satisfy that factor. How would it? You complained that you didn't get notice. Then you got notice. If you're going to complain, if you don't want something else to go forward, don't you have to move to stay that? I – yes, Your Honor. Okay. I recognize that that's a factor that is not in our favor here. Oh, thank you. I did find, Your Honor, where 363M was referenced, and it's in A1731. That's Volume 8 of the appendix. That's in front of Judge Swain? That was in front of Judge Swain, yes, Your Honor. Thank you very much. Thank you, Your Honor. We'll reserve the decision.